IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BILLY E. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | NO. 3:07-0592 |
| ) | JUDGE HAYNES |
| v. ) | |
| ) | |
| ROADWAY EXPRESS, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Plaintiff, Billy E. Johnson, filed this action under Title VII of the Civil Rights Act ("CRA") of 1964, as amended, 42 U.S.C. § 2000e et seq. against Defendant Roadway Express, his former employer. Plaintiff asserts that Roadway discriminated against him based upon his race and by failing to train him in a manner comparable to similarly situated white employees. Plaintiff also asserts that Roadway terminated him in retaliation for his complaints about alleged racial discrimination. The parties have completed discovery.

Before the Court is the Defendant Roadway Express's motion for summary judgment (Docket Entry No. 31), contending, in sum, that Plaintiff lacks any proof for his claims of racial discrimination in his termination and retaliation. Roadway contends Plaintiff engaged in unprofessional and inappropriate conduct, including yelling at black and white employees, using profanity, intimidating customers, and misrepresenting his position at Roadway. Roadway received a complaint from an important customer that Plaintiff verbally threatened the customer's representative and then called the customer's chief executive officer to voice his disagreement about the customer's policies. Although Plaintiff alleges that he was terminated in retaliation for complaining of racial discrimination, Defendant notes that Plaintiff never filed a

complaint of racial discrimination with Roadway during his employment. If Plaintiff had lodged a complaint, Plaintiff lacks any evidence that the Defendant's decision-makers were aware of his alleged protected activity when they decided to terminate his employment. Moreover, Plaintiff fails to prove any causal connection between Plaintiff's alleged protected activity and his terminations for his unprofessional conduct toward Roadway's customers and employees.

Plaintiff responds with a series of assertions, but has not presented any evidence. Plaintiff's deposition was filed with the Court. (Docket Entry No. 33-1).

## A. Findings of Fact[1]

Roadway is in the truck freight transportation business and transports freight nationally and internationally through its network of service and distribution centers or terminals. (Docket Entry No. 35, Brown Affidavit at ¶ 2). Plaintiff worked at Roadway's "Nashville's Terminal" that has approximately 400 employees. Id. at ¶¶ 2 and 4.

In May 2005, Roadway hired Plaintiff as a customer resolution specialist in the Overage, Shortage and Damaged ("OSD") Department. This is a non-bargaining unit position, sometimes referred to as an "OSD Clerk." The OSD Department resolves issues concerning overages, (too much of an item shipped or received), shortage (too little of an item shipped or received), or damaged goods. The OSD also resolves issues surrounding freight that the Nashville Terminal

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are not any material factual disputes. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

2

has received in error. The Outbound OSD Clerk handles replacement of lost or damaged items and ensuring that the freight reaches its final destination. (Docket Entry No. 35, Brown Affidavit at ¶ 14). The volume of Inbound OSD is four times the volume of Outbound OSD and Inbound OSD has to resolve difficult misplaced freight. Outbound OSD issues are readily resolved.

At Outbound OSD Plaintiff worked with Clover Norton whom Roadway hired at approximately the same time as Plaintiff. Norton was assigned to Inbound OSD. Cheryl Westmoreland, an African American, was the Lead Clerk in the OSD Department and trained Plaintiff and Norton. Westmoreland had a favorable view of Plaintiff initially, but later found that Plaintiff was not communicating effectively with other employees and customers because he insisted on resolving matters his way. (Docket Entry No. 36, Westmoreland Affidavit at ¶ 6. If employees or customers disagreed, Plaintiff simply became angry and did not participate in resolving the issue. Id.

Norton resigned and Margaret Awokoya, an African American female, took his position and Plaintiff had difficulty communicating with Awokoya. Plaintiff referred to Awokoya as "lazy and slow" in her work. Plaintiff was not Awokoya's supervisor, but Plaintiff began telling Awokoya how to perform her job and complained to Westmoreland about Awokoya. Roadway counseled Plaintiff on the need to charge his conduct toward Awokoya. Westmoreland had multiple meetings with both Plaintiff and Awokoya. Id. at ¶ 9. Westmoreland also counseled Plaintiff about his yelling at other employees and his use of profanity.

On March 9, 2006, Gregg Brown, operations manager and Plaintiff's supervisor met with Plaintiff and Marcus Lucas, an African American and a Roadway human resource coordinator, to discuss Plaintiff's comments about Awokoya's work. During the meeting, Plaintiff admitted his

3

difficulty in working with Awokoya and stated that he "did not know if he could correct this." Id. Brown told Plaintiff he is not Awokoya's supervisor. (Docket Entry No. 33-1, Deposition at p. 159 and Docket Entry No. 35, Brown Affidavit at ¶ 24). Brown emphasized that Plaintiff's unprofessional conduct in the workplace was the issue. Id. at ¶ 26. During this same meeting, Lucas asked Plaintiff if he would change his behavior and Plaintiff refused. Id. at ¶ 27.

On March 15, 2006, Awokoya informed Brown of Plaintiff's false accusations about her work. Id. at ¶ 28. Plaintiff accused Awokoya of moving freight from Inbound to Outbound that did not need to be in Outbound. Awokoya cited Plaintiff's yelling at her and his use of profanity. Plaintiff denied that his behavior was unprofessional. Id. at ¶ 31. Thereafter, Plaintiff refused to speak directly with Awokoya and communicated with her by email although their desks were less than three feet apart. Id. at ¶ 32. Brown spoke to Plaintiff about this issue and informed him that such behavior was disruptive and unacceptable. Id. at ¶ 33. Brown reminded Plaintiff of their earlier discussion of his difficulties in communicating with others and stressed that Plaintiff behavior had to change. Id. at ¶ 34. Awokoya resigned from Roadway in May, 2006. Id. at ¶ 35.

Plaintiff also spoke harshly to Westmoreland who was trying to train Plaintiff on Inbound procedures for over one week. (Docket Entry No. 36, Westmoreland Affidavit at ¶ 12). Plaintiff always refused Westmoreland's directives. Approximately one week later Plaintiff asked to speak to Westmoreland outside the office and then began screaming at her, yelling "You're doing me wrong. You won't help me." Id. Plaintiff was loud and several other employees overheard this conversation. Id. Westmoreland reported the incident to Steve Swarthout, Roadway's terminal manager and Brown submitted her written statement describing the incident. Brown and Swarthout counseled Plaintiff about this conduct. (Docket Entry No. 38, Swarthout

4

Affidavit at ¶ 4).

On June 9, 2006, Swarthout, received an email from Marilyn Kaldahl, a transportation analyst at Whirlpool Corporation and a preferred Roadway customer. Kaldahl related Plaintiff's contact with her about the disposition of Whirlpool freight at the Nashville Terminal and cited Plaintiff's repeated threats to her using inappropriate language and he later attempted to direct his anger at Whirlpool's Chief Executive Officer. Id. at ¶ 7.

In trying to resolve the issue, Kaldahl stated that Plaintiff ". . . called [her] numerous times daily with strongly worded threats. [Plaintiff then] took it upon himself to place a call to Whirlpool's Chairman and CEO. . . demanding to talk to him. Id. Kaldahl complained that Plaintiff had "acted in a totally unacceptable manner by calling [the Chairman and CEO]. . . [Plaintiff] completely overstepped his bounds and acted misapproprately [sic]." Id. at ¶ 9. Kaldahl requested that she be informed of Roadway's intended response and stated that "[a]t the very least, this complaint should be recorded in his personnel file with disciplinary action taken." Id. at ¶ 10. Scott Baiers, Kaldahl's supervisor, also emailed Swarthout about Plaintiff's conduct

> After reading this update (and speaking with Marilyn directly), I'm deeply troubled by this series of events. Please see that the appropriate actions are taken. If after your actions this individual remains employed with you, please see that he does not handle ANY Whirlpool business as we wish not to work with him.

Id. at ¶ 11 (emphasis added).

Swarthout and Brown discussed Kaldahl's complaint with Plaintiff. Plaintiff admitted to Kaldahl's description of his conduct but denied threatening Kaldahl. Plaintiff stated that he "just hit various phone extensions trying to get another party [at Whirlpool] to help resolve the

5

situation." (Docket Entry No. 37, Lucas Affidavit at ¶¶ 5-6[2]). Because Plaintiff's conduct violated Roadway's Code of Corporate Conduct, Lucas reviewed this policy on resolving freight issues with Plaintiff. (Docket Entry No. 35, Brown Affidavit at ¶ 42).

Roadway has a Code of Corporate Conduct that all employees are expected to honor. Section IX of the Code of Corporate Conduct, in effect, during Plaintiff's employment provides as follows:

> Honesty is the best and only policy when dealing with customers, suppliers, and others. Accordingly, the service our Company offers are not to be misrepresented. . . . The Company's best interest is served by providing quality services. . . . Customer needs are the reason for the Company's existence and they should be met promptly, courteously, and efficiently.

(Docket Entry No. 35, Exhibit 3 at p. 2).

Plaintiff acknowledged receiving the Code of Corporate Conduct on May 18, 2005. (Docket Entry No. 33-1, Plaintiff's Deposition Transcript at p. 138, Exhibit 6. Upon his employment, on May 18, 2005, Plaintiff acknowledged receiving Roadway's workplace harassment policy. Id. at p. 139. During his employment, Plaintiff never submitted a written complaint of discrimination or called the toll-free number to complain about alleged discrimination or harassment.

In a statement Plaintiff submitted to the EEOC, he admitted that he contacted "several individuals at Whirlpool," that he "got in contact with a VP at Whirlpools secretary," and that "the other personnel [he] had spoken with at Whirlpool were very angry [he] went to the VP and contacted terminal [manager] Steve Swarthout . . . ." (Docket Entry Nos. 33-1 and 35-5, Transcript at pp. 263-264, 269, Exhibit 20 at p. 6. At his deposition, however, Plaintiff denied

---

[2]Mr. Lucas documented this discussion, as set forth in Exhibit 2 of his Affidavit.

ever speaking to Kaldahl and testified that he only spoke to one individual at Whirlpool, a "white male." (Docket Entry No. 33-1, Transcript at p. 213). When confronted with a copy of his statement to the EEOC, Plaintiff changed his story several times, and ultimately admitted that he had spoken to several individuals at Whirlpool. Id. at pp. 213, 263-264.

Based upon Whirlpool's complaints, Plaintiff's violation of company policy and his prior conduct, Swarthout determined that Plaintiff's employment should be terminated. (Docket Entry No. 38, Swarthout Affidavit at ¶ 13). In a discussion with Lucas on June 19, 2006, Plaintiff asked if he was "about to be fired." (Docket Entry No. 37, Lucas Affidavit at ¶ 8). Lucas reminded Plaintiff of the multiple conversations both he and Brown had had with Plaintiff regarding his behavior. Id. at ¶ 9. Plaintiff responded that he did not believe Brown "liked him" and that Brown wanted to fire Plaintiff. Id. at ¶ 10. Lucas responded that Brown and Swarthout told Plaintiff his treatment of other people was unacceptable. Id. at ¶ 11. Lucas commented that if he had been Plaintiff's manager, he would have terminated Plaintiff long ago. Id. at ¶ 11. Based upon Plaintiff's earlier conduct and the Whirlpool incident, Roadway concluded that Plaintiff would not change his behavior and that his conduct was destructive to the company. (Docket Entry No. 35, Brown Affidavit at ¶ 43). On June 23, 2006, Brown and Lucas met with Plaintiff to inform him that his employment was terminated.

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua

7

sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> *As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.* Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873

8

F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that

9

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Prods., No. 89-5731 (6th Cir. September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.") (quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

10

It is likewise true that

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839

11

(1990). Here, the parties have given some references to the proof upon which they rely. Local Rule 8(b)(7)(A) and (C) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

    1.    Complex cases are not necessarily inappropriate for summary judgment.

    2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

    3.    The movant must meet the initial burden of showing `the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

    4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

    5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

    6.    As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

    7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

    8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

    9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> 10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

To establish a prima facie case of wrongful termination based on racial discrimination, Plaintiff must demonstrate: (1) that he is a member of a protected class; (2) that he was qualified for the job and performed it satisfactorily; (3) that despite his qualifications and satisfactory performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly-situated, non-protected individual. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); McClain v. NW. Cmty. Corr. Ctr. Judicial Corr. Bd., 449 F.3d 320, 332 (6th Cir. 2006). For his claim, Plaintiff must prove that he was performing "at a level which met his employer's legitimate expectations," McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990). Plaintiff cannot "raise a material issue of fact on the question of the quality of his work merely by challenging the

judgment of his supervisors." Id. at 1160. Moreover, "the aim is not to review bad business decisions, or to question the soundness of an employer's judgment." Id. Plaintiff must show that, "similarly-suited" employees with "all of the relevant aspects of his employment situation were nearly identical to those of the [non-minority's] employment situation," were treated differently. Seay v. Tennessee Valley Auth., 339 F.3d 454, 479 (6th Cir. 2003) (quoting Pierce v. Commonweath Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)).

Here, Plaintiff cannot prove his satisfactory job performance, given his multiple counseling sessions about his abusive treatment and language directed at Roadway employees and customers. Plaintiff's unprofessional conduct with Whirlpool placed Roadway's continuing relationship with an important customer at risk. Despite repeated warnings and counseling to change his behavior, Plaintiff refused to do so. Plaintiff cannot meet his burden by challenging Roadway's business judgment in terminating him for refusing to correct his behavior. Second, a black supervisor tried to train Plaintiff. Plaintiff cannot establish his claim because he cannot demonstrate that he was treated differently than similarly-situated, non-protected employees.

For the latter requirement, "to be similarly-situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Smith v. Leggett Wire Co., 220 F.3d 752, 762 (6th Cir. 2000). Plaintiff does not identify any such employees who received more favorable treatment. Plaintiff cannot establish a prima facie case of racial discrimination.

14

Finally, Roadway had a legitimate, non-discriminatory reason for terminating Plaintiff's employment given his history of unprofessional conduct. An employer who terminates an employee for this type of inappropriate conduct demonstrates a non-discriminatory justification. McDonald v. Union Camp Corp., 898 F.2d 1155 (6th Cir. 1990) (affirming summary judgment for employer where employer terminated plaintiff for inability to get along with others even though his job performance was satisfactory). Based upon the proof, Roadway acted reasonably under the same circumstances. Accordingly, Plaintiff's termination claims should be dismissed.

As to Plaintiff's retaliation claim, Plaintiff must prove: (1) that he engaged in legally protected activity; (2) that Roadway knew about his exercise of this right; (3) that Roadway then took an employment action adverse to Plaintiff; and (4) that the protected activity and the adverse employment action are causally connected. El-Zabet v. Nissan N. Am., Inc., 211 Fed. Appx. 460, 466 (6th Cir. 2006).

Plaintiff contends that he made verbal complaints, but it is undisputed that he never filed a complaint regarding racial discrimination during his employment at Roadway. In any event, there is not any evidence that relevant Roadway officials knew Plaintiff had done so. Excep for an adverse employment action, Plaintiff's proof does not establish any of these elements for this claim. Plaintiff's retaliation claim fails as a matter of law.

For these reasons, Defendants's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___17th___ day of April, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge

15